UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF LOUISIANA

**GABRIEL DEON LOGAN (#425940)**                     CIVIL ACTION

**VERSUS**

**WARDEN N. BURL CAIN, ET AL.**                     NO. 09-0389-RET-CN

<u>**NOTICE**</u>

Please take notice that the attached Magistrate Judge's Report has been filed with the Clerk of the United States District Court.

In accordance with 28 U.S.C. § 636(b)(1), you have fourteen (14) days after being served with the attached Report to file written objections to the proposed findings of fact, conclusions of law and recommendations therein. Failure to file written objections to the proposed findings, conclusions, and recommendations within 14 days after being served will bar you, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions of the Magistrate Judge which have been accepted by the District Court.

ABSOLUTELY NO EXTENSION OF TIME SHALL BE GRANTED TO FILE WRITTEN OBJECTIONS TO THE MAGISTRATE JUDGE'S REPORT.

Signed in chambers in Baton Rouge, Louisiana, May 21, 2010.

**MAGISTRATE JUDGE CHRISTINE NOLAND**

**UNITED STATES DISTRICT COURT**

**MIDDLE DISTRICT OF LOUISIANA**

**GABRIEL DEON LOGAN (#425940)**                                    **CIVIL ACTION**

**VERSUS**

**WARDEN N. BURL CAIN, ET AL.**                                     **NO. 09-0389-RET-CN**

### MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

This matter comes before the Court on the defendants' Motion for Summary Judgment, rec.doc.no. 9. This motion is opposed.

The pro se plaintiff, an inmate confined at the Louisiana State Penitentiary ("LSP"), Angola, Louisiana, brought this action pursuant to 42 U.S.C. § 1983 against Warden N. Burl Cain, Ass't Warden John Calvert, Captain Kenneth Harris, Captain Luke Rheams, Major Chad Oubre and E.M.T. Michael Thomas, complaining that the defendants violated his constitutional rights on July 6, 2008, through excessive force on that date, and through deliberate indifference to his serious medical needs on that date and thereafter.

The defendants move for summary judgment, relying upon the pleadings, a Statement of Undisputed Facts, a certified copy of the plaintiff's administrative remedy proceedings (including copies of the plaintiff's cellblock logbook for July 6, 2008), a disciplinary report issued by David Stroud dated July 6, 2008 (charging the plaintiff with Aggravated Fighting), an ARP Statement prepared by David Stroud dated August 20, 2008, a disciplinary report issued by defendant Kenneth Harris dated July 6, 2008 (charging the plaintiff with Aggravated Disobedience), an Unusual Occurrence Report dated July 6, 2008, prepared by defendant Kenneth Harris, ARP Statements dated August 17, 2008, prepared by

defendant Kenneth Harris and defendant Luke Rheams, excerpts from the plaintiff's medical records, a copy of LSP Directive No. 09-002 (relative to "Use of Force"), a copy of the Disciplinary Rules and Procedures for Adult Inmates, and the affidavits of Tara Bonnette, David Stroud, William Edward Mealey, Jonathan Roundtree, and defendants Burl Cain, John Calvert, Chad Oubre, Luke Rheams, Kenneth Harris and Michael Thomas.

Summary judgment is appropriate where there is no genuine issue as to any material fact, and the moving party is entitled to judgment as a matter of law. Rule 56, Federal Rules of Civil Procedure. Supporting affidavits must set forth facts which would be admissible in evidence. Opposing responses must set forth specific facts showing that there is a genuine issue for trial. Rule 56(e), Federal Rules of Civil Procedure.

In his Complaint, the plaintiff alleges that on July 6, 2008, defendants Harris and Rheams arrived at his cell tier in response to a beeper alert by Cadet David Stroud. Upon arrival, defendants Harris and Rheams came down the cell tier, placed the plaintiff in shackles, and left the plaintiff in his cell while they returned to the head of the tier to ask Cadet Stroud what had occurred. When Cadet Stroud reported that the plaintiff had thrown a food tray at a co-inmate tier walker, defendants Harris and Rheams returned to the plaintiff's cell and both defendants proceeded to spray mace into the plaintiff's cell, notwithstanding that the plaintiff held up his asthma pump and told the defendants that he was not resisting. After the plaintiff allegedly collapsed from the effects of the mace, he was escorted to the prison infirmary where his eyes were flushed, and he was treated for complaints of "a headache, lightheadedness, nausea and weakness". He was then placed in administrative segregation whereupon defendants Harris and Rheams again approached his cell and threatened further harm if the

plaintiff made further complaints. In addition, defendant Rheams again sprayed the plaintiff with mace, causing the plaintiff to stick his face into the toilet to relieve the pain (because the water supply to his sink had allegedly been turned off). Several days later, on July 9, 2008, the plaintiff declared a medical emergency because of "a throbbing headache, lightheadedness, blurred vision, nausea, weakness and loss of appetite". Defendants Capt. Harris and E.M.T. Thomas were allegedly on the scene and, according to the plaintiff, ignored his complaints and walked off the tier without treatment. A short while later, the plaintiff again declared a medical emergency, this time to Cadet Stroud, whereupon he was visited by social worker Julie Soilieu (not named as a defendant herein). Ms. Soilieu allegedly assessed the plaintiff's mental state and told him to wait a few minutes while she contacted a superior so as to obtain assistance. Before she could return, however, Cadet Stroud was called to the plaintiff's tier by other inmates because the plaintiff was not responding to them. According to the plaintiff, Cadet Stroud checked on the plaintiff and then activated his beeper to notify superior officers. Finally, the plaintiff complains that after he filed an administrative grievance relative to the foregoing, he was threatened with further harm if he did not agree to voluntarily withdraw the grievance. Specifically, he asserts that he was approached by defendants Calvert and Oubre on August 7 and 8, 2008, respectively, and was urged to drop the referenced grievance.

    Initially, it appears from the plaintiff's Complaint that he has named the defendants in both their individual and their official capacities. The law is clear, however, that § 1983 does not provide a federal forum for litigants who seek a remedy against a State for alleged deprivations of civil liberties. Neither a State, nor its officials

acting in their official capacities, are "persons" under § 1983. <u>Will v. Michigan Department of State Police</u>, 491 U.S. 58, 109 S.Ct. 2304, 105 L.Ed.2d 45 (1989). Thus, it is clear that the plaintiff fails to state a claim under § 1983 against the defendants in their official capacities.

Turning to the plaintiff's claims asserted against the defendants in their individual capacities, it appears, first, with regard to the plaintiff's claims asserted against defendants Calvert and Oubre, that the plaintiff has failed to exhaust administrative remedies as mandated by 42 U.S.C. § 1997e. Pursuant to this statute, the plaintiff was required to exhaust administrative remedies available to him prior to the institution of suit in federal court relative to his claims. This provision is mandatory and allows for no exceptions.

Upon a review of the plaintiff's administrative grievance, it appears that he makes no claim therein of threats or intimidation undertaken by defendants John Calvert or Chad Oubre in August, 2008. To the contrary, the claims asserted in the grievance are limited to claims of excessive force and deliberate medical indifference occurring on July 6 and 9, 2008, respectively. Accordingly, the Court concludes that the defendants' motion for summary judgment is well-taken in this regard, and that the plaintiff's claims asserted against defendants Calvert and Oubre should be dismissed pursuant to 42 U.S.C. § 1997e.[1]

---

[1] In his opposition to the defendants' motion, the plaintiff suggests that he submitted a second or "supplemental" grievance to prison officials regarding the actions of defendants Calvert and Oubre, and that a copy of this grievance is available in another civil action filed by the plaintiff before this court, <u>Gabriel Dean Logan v. J. Dawson, et al.</u>, Civil Action No. 09-CV-0417-JJB-SCR. Whether or not this assertion is true and whether or not the plaintiff in fact exhausted the alleged supplemental grievance, the Court concludes in any event that a substantive review of the plaintiff's claim against these defendants compels the finding that the claim lacks merit. Specifically, all that the plaintiff asserts is that these two defendants approached him on

The defendants also assert that the plaintiff has failed to state a claim or cause of action against defendant Burl Cain. In this regard, pursuant to well-established legal principles, the law is clear that in order for a prison official to be held liable under § 1983, the official must have been either personally involved in conduct causing an alleged deprivation of an inmate's constitutional rights, or there must be a causal connection between the actions of the official and the constitutional violation sought to be redressed. <u>Lozano v. Smith</u>, 718 F.2d 756 (5th Cir. 1983). Any allegation that this defendant is responsible for the conduct of subordinate employees is alone insufficient to state a claim against him under § 1983. <u>Monell v. Department of Social Services</u>, 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978).

Applying this standard to the plaintiff's claims asserted against defendant Cain, it appears that there are no allegations of any direct or personal involvement on the part of this defendant in the events complained of. There is no suggestion in the record that, as Warden at

---

August 7 and 8, 2008, and urged him to drop his administrative grievance, including a veiled threat of harm if he refused to do so. The plaintiff asserts that he felt intimidated but nonetheless refused to drop the grievance. Accordingly, he suffered no prejudice in fact and no actual interference with his grievance, which is a prerequisite for a claim of interference with the right to seek redress of grievances under the First Amendment. <u>Crowder v. Sinyard</u>, 884 F.2d 804 (5th Cir. 1989), <u>cert. denied</u>, 496 U.S. 924, 110 S.Ct. 2617, 110 L.Ed.2d 638 (1990), <u>citing</u> <u>Howland v. Kilquist</u>, 833 F.2d 639 (7th Cir. 1987). <u>See also</u> <u>Lewis v. Casey</u>, 511 U.S. 1066, 116 S.Ct. 2174, 135 L.Ed.2d 606 (1996). Further, although the plaintiff asserts that the defendants threatened him with harm, there is no suggestion that these threats were carried out, and the law is clear that mere threats and verbal abuse alone do not rise to the level of a constitutional violation. <u>McFadden v. Lucas</u>, 713 F.2d 143 (5th Cir.), <u>cert</u>. <u>denied</u>, 464 U.S. 998, 104 S.Ct. 499 (1983)("Mere threatening language and gestures of a custodial officer do not, even if true, amount to a constitutional violation.").

LSP, the defendant was either personally involved in or contemporaneously aware of any alleged wrongful conduct by defendants Harris or Rheams on July 6, 2008, or by defendants Harris or Thomas on July 9, 2008. Moreover, to the extent that the plaintiff's allegations may be interpreted as asserting that this defendant failed to act when informed (through the plaintiff's administrative grievances) of the defendants' alleged misconduct, this claim does not rise the level of a constitutional violation.  The plaintiff is not constitutionally entitled to an investigation of his administrative complaints or to a favorable response thereto.  See Geiger v. Jowers, 404 F.3d 371 (5th Cir. 2005). Accordingly, the plaintiff's claim regarding any alleged failure of defendant Cain to investigate or respond to his administrative grievances or complaints is without legal foundation and must be dismissed.[2]

Turning finally to the plaintiff's claims asserted against the remaining defendants, Kenneth Harris, Luke Rheams and Michael Thomas, the defendants have raised the defense of qualified immunity.  Specifically, the defendants contend that the plaintiff has failed to make sufficient allegations of conduct on their part which rises to the level of a violation of the plaintiff's constitutional rights.

The qualified immunity defense is a familiar one and, employing a two-step process, operates to protect public officials who are performing discretionary tasks.  Hale v. Townley, 45 F.3d 914 (5th Cir. 1995).  As enunciated in Saucier v. Katz, 533 U.S. 194, 121 S.Ct. 2151, 150 L.Ed.2d 272 (2001), the first step in the analysis is to consider whether, taking

---

[2] The Court further notes, in the alternative, that the plaintiff, in his opposition to the defendants' motion, includes a statement that he "moves to dismiss N. Burl Cain from the civil Action."  This may be interpreted as a request for voluntary dismissal pursuant to Rule 41 of the Federal Rules of Civil Procedure.

the facts as alleged in the light most favorable to the plaintiff, the defendants' conduct violated the plaintiff's constitutional rights. Second, the district court looks to whether the rights allegedly violated were clearly established. This inquiry, the Court stated, is undertaken in light of the specific context of the case, not as a broad, general proposition. The relevant, dispositive inquiry in determining whether a constitutional right was clearly established is whether it would have been clear to a reasonable state official that his conduct was unlawful in the situation which he confronted. Id. In the instant case, the defendants assert that the plaintiff's claim fails in the first instance because he has failed to show that they participated in any violation of his constitutional rights.[3]

Undertaking the Saucier analysis, the Court concludes that the defendants' motion should be granted in part and denied in part, as hereafter discussed.

Addressing first the plaintiff's claim of excessive force asserted against defendant Harris and Rheams, force is excessive and violates the Eighth Amendment of the United States Constitution if it is applied maliciously and sadistically for the very purpose of causing harm rather than in a good faith effort to maintain or restore discipline. Hudson v. McMillian, 503 U.S. 1, 112 S.Ct. 995, 117 L.Ed.2d 156 (1992); Whitley v. Albers, 475 U.S. 312, 106 S.Ct. 1078, 89 L.Ed.2d 251 (1986). Not every malevolent action by a prison guard, however, gives rise to a

---

[3] The United States Supreme Court has recently held that rigid chronological adherence to the Saucier two-step methodology is no longer mandatory. Pearson v. Callahan, ___ U.S. ___, 129 S.Ct. 808, 172 L.Ed.2d 565 (2009). Although the Saucier methodology will be "often beneficial", the Callahan Court leaves to the lower courts discretion as to the order in which they may wish to address the two prongs of the qualified immunity analysis.

federal cause of action.  The Eighth Amendment's prohibition against cruel and unusual punishment necessarily excludes from constitutional recognition de minimis uses of physical force, provided that such force is not of a sort "repugnant to the conscience of mankind."  Hudson v. McMillian, supra.  While an inmate-plaintiff need not show a significant injury to prevail on a claim of excessive force, a necessary element of an excessive force claim is proof of some injury resulting from the use of such force.  Knight v. Caldwell, 970 F.2d 1430 (5th Cir. 1992), cert. denied, 507 U.S. 926, 113 S.Ct. 1298, 122 L.Ed.2d 688 (1993).  Factors to be considered in determining whether the use of force has been excessive include the extent of injury sustained, if any, the need for the application of force, the relationship between the need for force and the amount of force utilized, the threat reasonably perceived by prison officials, and any efforts made to temper the severity of a forceful response.  Hudson v. McMillian, supra.

     In support of their claim that they are not liable for the use of excessive force against the plaintiff on July 6, 2008, the defendants assert (1) that the plaintiff's injuries resulting from the use of force were de minimis, (2) that Captain Rheams did not approach or speak to the plaintiff on that date, much less utilize excessive force against him, and (3) that Captain Harris utilized only a minimal amount of irritant spray in response to the plaintiff's repeated refusal to obey orders to come to the bars of his cell to be restrained.  The Court finds, however, that there are disputed questions of material fact which preclude the grant of summary judgment in connection with this issue.  First, with regard to the extent of injury allegedly sustained by the plaintiff, a recent decision of the United States Supreme Court reiterates that it is not the degree of injury which determines the viability of a claim of

excessive force, but whether the force was "applied maliciously and sadistically to cause harm", thereby offending "contemporary standards of decency". Wilkins v. Gaddy, ___ U.S. ___, 130 S.Ct. 1175 (2010), citing Hudson v. McMillian, supra. Further, although "the extent of injury suffered by an inmate is one factor that may suggest 'whether the use of force could plausibly have been thought necessary' in a particular situation," and "may also provide some indication of the amount of force applied," an inmate who has been subjected to the gratuitous use of force by prison officials "does not lose his ability to pursue an excessive force claim merely because he has the good fortune to escape without serious injury." Id. In the instant case, the plaintiff alleges that defendants Rheams and Harris sprayed large amounts of chemical agent into his cell on two separate occasions without provocation or justification. He was taken to the prison infirmary on that date, and he continued to complain of symptoms several days later on July 9, 2008. Based on the standard set forth in the Wilkins case, the Court finds that the plaintiff's alleged injuries are sufficient to support a claim of excessive force herein.

Turning next to the defendants' assertion that the plaintiff has not adequately shown that the force utilized was applied maliciously and sadistically, and was not "applied in a good faith effort to maintain or restore discipline", Hudson, supra, the Court finds that there are disputed questions of material fact which preclude the grant of summary judgment in this case. Although the affidavit of defendant Kenneth Harris asserts that he applied only a brief one-second burst of chemical agent into the plaintiff's cell on July 6, 2008, and that he did so only in response to the plaintiff's repeated refusal to obey orders to come to the bars of his cell to be restrained, the statements of co-inmates

Mark Ellis and Joseph Brown, attached to the plaintiff's opposition memorandum, rec.doc.no. 14, make the countervailing assertion that defendants Harris and Rheams both came to the plaintiff's cell on that date and sprayed gas into the plaintiff's cell without provocation. Although these statements were neither made before a notary public nor made "under penalty of perjury", see 28 U.S.C. § 1746, and are therefore not properly before the Court, there is, in addition to these statements, other evidence which calls into question the veracity of the defendants' assertions regarding this incident. For example, whereas the defendants have produced a purported disciplinary report prepared by defendant Harris which charges the plaintiff with "Aggravated Disobedience" for refusing orders to come to the bars of his cell, this disciplinary report is suspect because it was apparently never formally processed by prison officials, and the plaintiff was neither taken before a disciplinary board nor punished in connection therewith. See attachments to rec.doc.no. 14, which indicate that prison officials have no record of the purported disciplinary report for "Aggravated Disobedience". This permits the inference that the disciplinary report was prepared by the defendants, not as a formal disciplinary charge but only as an after-the-fact justification for their use of irritant spray. In addition, there appear to be arguable discrepancies in the prison records pertinent to this event which potentially call into question the participation of defendant Rheams in the incident. For example, defendant Rheams states in his ARP Statement dated August 17, 2008, that he responded to the beeper alert on July 6, 2008, and that, "once Capt. Harris arrived he took control of the situation". (Emphasis added). This language suggests that defendant Rheams was the first officer on the scene. In contrast, defendant Rheams' affidavit, attached to the motion for summary

judgment, asserts that, "[u]pon my arrival to the tier, Captain K. Harris ... meets me at the head lobby and told me that he had everything in control", suggesting that defendant Harris was the first officer on the scene. In addition, the affidavit of defendant Harris provides a chronology of events which raises a question in the mind of the Court as to the extent of participation by defendant Rheams. Specifically, defendant Harris avers in his affidavit that he arrived at the tier in response to the beeper alert, spoke with Cadet Stroud to learn what had occurred, went down the tier to the plaintiff's cell, gave several direct orders to the plaintiff to come to the bars, returned to the head of the tier to retrieve a can of chemical agent upon the plaintiff's refusal, returned to the plaintiff's cell to again order the plaintiff to come to the bars, utilized a one-second burst of chemical agent, placed the plaintiff in restraints upon the plaintiff's compliance, escorted the plaintiff to the shower cell, and "[i]t was approximately at this time that I saw Captain Luke Rheams and I told him that, I have everything under control, and he left the Lobby area." The Court does not understand how these several chronological steps, which unquestionably took some period of time, could have all transpired prior to the arrival of Captain Rheams, who admittedly responded to an emergency beeper alert. It appears at least arguable, as stated in the ARP Statement of Cadet Stroud, also attached to the defendants' motion, that "Capt. K. Harris and Capt. L. Rheams responded and took control of the situation", and as reiterated in his affidavit, "Captain Kenneth Harris and Captain Luke Rheams responded to the activated beeper and [I] opened the tier gate for them and they took control of the situation." (Emphasis added). While these noted discrepancies are not determinative of the issues in this case, they potentially call into question the participation of defendant

Rheams in the incident and thus, the veracity of both defendants with regard to the entire occurrence and with regard to the amount of irritant spray utilized on that date. On this showing, it appears that there are disputed questions of material fact which preclude the grant of summary judgment as to this issue.

Turning to the plaintiff's claim of deliberate medical indifference asserted against defendants Kenneth Harris and Michael Thomas on July 9, 2008, the Eighth Amendment to the United States Constitution prohibits the wanton infliction of pain. Estelle v. Gamble, 429 U.S. 97, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976). To state a claim under the Eighth Amendment of improper or inadequate attention to medical needs, a prisoner must assert both that appropriate care was denied and that the denial constituted "deliberate indifference to serious medical needs." Estelle v. Gamble, supra; Johnson v. Treen, 759 F.2d 1236 (5th Cir. 1985). Whether the plaintiff received the treatment or accommodation that he feels he should have is not the issue. Estelle v. Gamble, supra; Woodall v. Foti, 648 F.2d 268 (5th Cir. 1981). Nor do negligence, neglect, medical malpractice or unsuccessful medical treatment give rise to a § 1983 cause of action. Varnado v. Lynaugh, 920 F.2d 320 (5th Cir. 1991); Johnson v. Treen, supra. Rather, as stated in Farmer v. Brennan, 511 U.S. 825, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1994), "the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference."

Although the plaintiff asserts that defendants Harris and Thomas did not examine or treat him on July 9, 2008, this is an assertion that is not supported by the record. In the first place, the defendants have produced medical records reflecting treatment and attention provided to

the plaintiff on that date, as well as the affidavits of defendant Thomas and other health care workers regarding such treatment.  The plaintiff's Complaint, on the other hand, is neither sworn nor notarized, and he has produced neither affidavits nor sworn statements in contravention of the defendants' affidavits and evidence relative to this claim.  In the context of a motion for summary judgment, it is well-settled that a plaintiff may not rest upon mere allegations or assertions contained in his unsworn Complaint in opposing such a motion.  Celotex Corp. v. Catrett, 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).  In order to meet his burden of proof, the party opposing a motion for summary judgment "may not sit on its hands, complacently relying" on the pleadings.  Weyant v. Acceptance Insurance Co., 917 F.2d 209 (5th Cir. 1990).  He must designate specific evidence in the record of sufficient caliber and quantity to create a genuine issue for trial, or produce supporting evidence on his own behalf.  Matsushita Electric Industrial Co. v. Zenith Radio Corp., 475 U.S. 574, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 106 S.Ct. 2501, 91 L.Ed.2d 202 (1986); Phillips Oil Company v. OKC Corp., 812 F.2d 265 (5th Cir. 1987).  Based on the foregoing, the Court finds no basis for the imposition of liability against the defendants for alleged deliberate indifference on July 9, 2008.  Although the plaintiff was unhappy with the care which he received on that date, it appears that his medical complaints were ultimately attended to and were not ignored.  The defendants have produced a Health Care Request Form dated July 9, 2008, which reflects that defendant Thomas saw the plaintiff at around 6:00 a.m. on that date, took the plaintiff's vital signs and, in response to a complaint of nausea, provided the plaintiff a dose of "pink bismuth stat".  Although the plaintiff asserts that this form was fabricated, and

points to the absence of his own signature or handwriting on the form as proof of this assertion, the Court does not find this unsupported assertion to create a disputed issue of material fact. Further, even if it is true that defendants Harris and Thomas did not provide immediate medical attention on the morning of July 9, 2008, the plaintiff concedes that he was able to request medical attention shortly thereafter, on Cadet Stroud's "next round" (and rounds apparently occurred approximately every 30 minutes). As a result, the plaintiff was seen by a social worker at around 8:30 a.m., at which time the social worker went to obtain medical assistance for him. Before she could return, however, co-inmates on the tier called out to Cadet Stroud who, in turn, called for emergency assistance. An Ambulance Run Report reflects that the plaintiff was seen by E.M.T. Christine LaCour (not named as a defendant herein) at 9:42 a.m. and at that time was alert and well-oriented and was in no acute distress. When questioned, the plaintiff stated that he had been feeling weak but he denied "headache, dizziness, visual or auditorial changes, ... [or] loss of consciousness". After taking the plaintiff's vital signs and upon finding no objective evidence of serious problems, E.M.T. LaCour contacted her superiors and was advised not to transport the plaintiff to the infirmary. Later that day, at around 3:00 p.m., the plaintiff was again seen, this time for a reported loss of consciousness. On this occasion, he was seen by E.M.T. Lindy Leckie (not named as a defendant herein) who again took the plaintiff's vital signs and noted that he was alert and well-oriented and in no acute distress. The plaintiff reported that he felt sick and couldn't eat but denied experiencing any nausea, vomiting or diarrhea. By telephone, the plaintiff was prescribed a shot of Toradol and Norflex and was advised to keep his appointment at the infirmary the next morning.

Based on the foregoing, it does not appear that the plaintiff's serious medical needs were ignored on July 9, 2008. Although the plaintiff disputes the veracity of the medical record of 6:00 a.m. on that date, signed by defendant Thomas, the plaintiff does not contend that the other medical records of that date have been falsified or altered. It thus appears that, at most, the plaintiff's treatment was delayed for a short period of time on the morning of that date, and that when he did in fact receive medical attention, his examinations were unremarkable and, for the most part, objectively normal. Accordingly, the Court finds that the plaintiff has failed to set forth an actionable claim of deliberate medical indifference against defendants Michael Thomas and Kenneth Harris, and that this claim should be dismissed.

Finally, the plaintiff also seeks to invoke the supplemental jurisdiction of this court with regard to his claims arising under state law. District courts, however, may decline to exercise supplemental jurisdiction over a claim or claims if the claim raises a novel or complex issue of state law, if the claim substantially predominates over the claims over which the district court has original jurisdiction, if the district court has dismissed all claims over which it had original jurisdiction, or for other compelling reasons. 28 U.S.C. § 1367. In the instant case, inasmuch as the Court recommends dismissal of most of the plaintiff's federal claims asserted herein, it is appropriate that the Court decline to exercise supplemental jurisdiction over the plaintiff's state law claims.

## RECOMMENDATION

It is recommended that the defendants' Motion for Summary Judgment, rec.doc.no. 9, be granted in part, dismissing the plaintiff's claims asserted against the defendants in their official capacities, dismissing

the plaintiff's claim asserted against defendants John Calvert and Chad Oubre for failure to exhaust administrative remedies pursuant to 42 U.S.C. § 1997e, dismissing the plaintiff's claim asserted against defendant Burl Cain for failure to state a claim of constitutional significance, and dismissing the plaintiff's claim of deliberate medical indifference asserted against defendants Kenneth Harris and Michael Thomas. It is further recommended that the Court decline to exercise supplemental jurisdiction over the plaintiff's state law claims and that this matter be referred back for further proceedings in connection with the plaintiff's claim of excessive force against defendants Kenneth Harris and Luke Rheams on July 6, 2008.

Signed in chambers in Baton Rouge, Louisiana, May 21, 2010.

**MAGISTRATE JUDGE CHRISTINE NOLAND**